CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 18 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ABDUL HAMZA WALI MUHAMMAD, | ) | CASE NO. 7:13CV00389 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| VICKI PHIPPS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Abdul Hamza Wali Muhammad, a Virginia inmate proceeding pro se, has filed a two-paragraph, verified civil rights complaint under 42 U.S.C. § 1983, alleging that three prison medical personnel have deprived him of adequate medical treatment for eye problems. Muhammad has since submitted his own affidavit and a series of unsworn "motions" stating additional allegations about his medical claims. He also moves to add claims against new defendants for failing to protect him from an inmate assault and seeks interlocutory relief. After review of these submissions, the court concludes that the entire action must be summarily dismissed for failure to state a claim and that Muhammad's pending motions must be denied.

## Background

Liberally construing Muhammad's submissions regarding his medical care, the court understands him to be alleging the following events. A fellow inmate at Red Onion Correctional Center punched Muhammad in the head in January 2013. Since then, Muhammad has experienced vision changes. He was examined by an eye specialist at "MCV/VCU" who mentioned that surgical intervention might "eventually" be necessary. He also states that since February 2013, he has seen the optometrist five or six times and receives eye drops. He underwent an MRI exam on March 18, 2013, to examine the functioning of the optic nerve, but

the results of the test were normal. The optometrist also referred him for testing to rule out a certain eye disease, but the physician who later examined Muhammad said he did not have symptoms of that eye disease, so did not order testing. When Muhammad complained of migraine headaches, anxiety, and other mental health issues, the doctors prescribed medication for these problems.

According to Muhammad, before the January attack, he only needed reading glasses, but in June 2013, his left eye vision was 20/50 and his right eye vision was 20/30. In August 2013, medical staff noted that Muhammad's left eye appeared swollen and the lid was drooping. He states that sometimes he experiences double vision and temporary blindness. The doctors have told him that they do not know what is causing his eye problems since the January assault. A nurse erroneously told Muhammad that he had been approved for follow up with the MCV eye specialist. He later learned, however, that the Red Onion medical staff intended instead to continue monitoring his condition for "any sudden changes."

Based on these allegations, Muhammad asserts that he is "definitely not receiving adequate medical care." He sues the prison nursing administrator, a doctor, and an optometrist, seeking monetary damages and injunctive relief ordering a "telemed video conference" with "a third party o[p]tholmologist specialist" (ECF No. 13, at 1.), possible surgery, and a permanent transfer.

## Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim in any federal civil action, the plaintiff's complaint must present "[f]actual allegations

[specific] enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States as a result of specific conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

Pleadings prepared by a pro se plaintiff must be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must liberally construe such pleadings to prevent potentially meritorious claims from being defeated on merely technical deficiencies and may allow the plaintiff to amend a claim that may, with additional development, have substance. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

Muhammad's two-paragraph initial submission, although it appears on a § 1983 form signed under penalty of perjury, is not a proper civil complaint, as it fails to provide sufficient factual matter to state a claim against anyone. It does not identify any particular action or omission by any of the named defendants in violation of plaintiff's constitutional rights. While Muhammad's subsequent submissions about his medical care flesh out this information to some degree, this scattered presentation of the plaintiff's claims does not comply with the Federal Rules of Civil Procedure. The rules do not require the defendants, or the court, to sift through 7 separate "motions" and a stack of inmate grievance forms in order to fashion the substance of Muhammad's claims for him. Moreover, because these later submissions are not signed under penalty of perjury, he has not verified these allegations as being true.

3

Because Muhammad is pro se, the court will not dismiss his case based on these technical deficiencies.[1] Rather, the court will summarily dismiss the action because even liberally construed, his allegations and submissions do not present facts supporting any actionable § 1983 claim against the defendants named in the complaint. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to present the factual basis for a claim. Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). To state a claim that a prison doctor violated his constitutional rights, Muhammad must state facts showing that the doctor knew of a serious medical condition that posed an excessive risk to Muhammad's health and responded unreasonably to that condition. Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). The doctor's "inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in determining the appropriate diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105-106; Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975). Likewise, Muhammad's mere disagreement with the doctor's treatment decisions does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Other prison officials may rightfully rely on the opinion of the treating physician as to the proper course of treatment. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).

Muhammad's allegations do not support a finding that the Red Onion medical staff members have ignored his vision problems since the assault. By his own account, Muhammad has been examined by a specialist on one occasion, has undergone an MRI with normal results,

---

[1] The court notes, however, that this civil action is not the first federal lawsuit Muhammad has filed. Thus, he has little excuse for the disorderly and piecemeal manner in which he has submitted his claims in this action.

and has seen the optometrist several times. The doctor has observed no symptoms of any eye disease that might be causing his vision trouble. According to Muhammad, these medical personnel have determined that the cause of Muhammad's symptoms is presently unknown and that the appropriate course of treatment at this time is to monitor his condition for any sudden changes.

These actions do not support a finding that the doctor or optometrist has acted with deliberate indifference under Estelle, and this court cannot second-guess the medical judgment of Muhammad's treating doctors that no additional testing is warranted at this time. Muhammad's insistence that he should be sent back to the eye specialist immediately is nothing more than disagreement with the defendants' prescribed course of treatment, which does not give rise to any constitutional claim. Moreover, the nursing administrator Muhammad has named could rightfully rely on the doctors' professional decisions to monitor his symptoms. Hence, Muhammad's allegations fail to demonstrate any respect in which this defendant has acted with deliberate indifference to his needs. For these reasons, the court concludes that Muhammad's allegations as a whole do not give rise to any actionable claim against the medical defendants he named in the complaint. Therefore, the court will summarily dismiss the action without prejudice, pursuant to § 1915A(b)(1). For the same reasons, the court denies plaintiff's motion for summary judgment. (ECF No. 11).

As the original action must be dismissed, the court must also deny Muhammad's motion to amend to add new claims. (ECF No. 12).[2] Moreover, this motion is not well taken. Muhammad seeks to sue four prison security officers for failing to intervene quickly enough after another inmate attacked Muhammad in the recreation area on January 5, 2013. As these

---

[2] To the extent that the motion to amend adds additional allegations concerning Muhammad's medical condition and course of medical care, it will be granted, and the court has considered these allegations in addressing Muhammad's medical claims against the original defendants.

5

new claims concern different defendants and different events and transactions than the claims alleged in the initial complaint, regarding medical care provided after the January assault, the new claims are not properly joined to this action. See Fed. R. Civ. P. 18 & 20 (regarding joinder of claims and parties).

Finally, the court must deny Muhammad's motion for interlocutory relief. (ECF No. 13). In this motion, Muhammad seeks an order directing medical officials to arrange for him to be seen by "a third party o[phthal]mologist specialist telemed video conference." For the reasons already discussed, Muhammad has not shown any likelihood of success on the merits of his medical claim or that he is likely to suffer irreparable harm in the absence of interlocutory relief on this matter. Thus, he has not alleged facts to satisfy the four-part standard required to warrant the interlocutory relief he seeks. See Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds by, 559 U.S. 1089 (2010), reinstated in relevant part by 607 F.3d 355, 355 (4th Cir. 2010) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008) (finding preliminary injunctive relief appropriate only upon movant's clear showing "(1) that he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the public interest").

Muhammad also seeks interlocutory injunctive relief, based on a new allegation that the defendants in the initial complaint and the motion to amend have denied his constant pleas for protective custody. Muhammad alleges that because he wanted to leave segregation, he withdrew his enemy summary forms and was assigned to the same pod as his enemies. Muhammad states that he will be placed in that pod, once his pending civil actions are resolved in several months. An officer allegedly told Muhammad he had convinced the gang members to

wait to "settle [their] beefs" until they were transferred to a Security Level 5 general population facility. These concerns Muhammad raises about threats to his safety from other inmates are not related to the claims in the underlying civil action regarding his medical care. Therefore, his motion for interlocutory relief based on this newly presented danger must be denied. See Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."). For the same reason, the court will not construe Muhammad's current motion as seeking to amend this action.

## Conclusion

For the reasons stated, the court dismisses Muhammad's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. If Muhammad believes that his security concerns have not been properly addressed, and after he has exhausted all available administrative remedies, he may wish to file a new civil action naming as defendants those persons responsible for security arrangements. The court also denies his motion to amend to bring new claims against new defendants and denies his motion for interlocutory injunctive relief. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 18th day of September, 2013.

_____
Chief United States District Judge